# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

GUNNAR OPTIKS, LLC, a California limited liability corporation,

    Plaintiff,

vs.

MAD PANDA, LLC, a North Carolina limited liability corporation,

    Defendant.

Case No.: 3:14-cv-1938 BTM (KSC)

**ORDER GRANTING IN PART MOTION TO DISMISS, STAY OR TRANSFER**

On October 14, 2014, Defendant Mad Panda, LLC filed a Motion to Dismiss, Stay or Transfer Plaintiff Gunnar Optiks, LLC's Complaint to the Eastern District of North Carolina, where a parallel action is pending between these parties. For the reasons outlined below, the motion is GRANTED in part, and the matter is STAYED pursuant to the first-to-file rule.

## I. BACKGROUND

The matter arises out of Gunnar's allegations that Mad Panda violated its trademark and patent rights in the "Scope" line of video-gamming and computer eyewear by marketing and selling a competing product called

1

"NoScope." Gunnar's counsel sent a three-page cease and desist letter to Mad Panda on August 6, 2014 ("letter," Dkt. No. 16-2) outlining the basis of its potential trademark and patent infringement claims, demanding that Mad Panda take certain actions necessary to any settlement, and directing it to respond within 10 days. Instead of responding, Mad Panda filed an action in the Eastern District of North Carolina, <u>Mad Panda, LLC v. Gunnar Optiks, LLC</u>, Case No. 5:14-cv-00470-F, on August 18, 2014 ("North Carolina action") requesting a declaration of non-infringement under federal and state law for use of Gunnar's "NoScope" trademark, the term "Gunnar" in comparative advertising and for the manufacture and sale of computer glasses, as well as a declaration of invalidity of three of Gunnar's patents (Dkt. No. 14-4). On August 19, 2014, Gunnar filed this matter against Mad Panda ("California action"), stating causes of action for trademark infringement, unfair competition, false designation of origin and cancellation of trademark registration, but not patent infringement. Mad Panda now moves the Court to dismiss, stay or transfer the California action to the Eastern District of North Carolina on grounds of the first-to-file rule and matters of forum convenience. Mad Panda's motion is GRANTED in part and the matter is STAYED.

## II. DISCUSSION

**A. First-to-File Rule**

A federal district court has discretion to dismiss, stay, or transfer a case to another district court under the first-to-file rule. <u>Pacesetter Sys., Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 94-95 (9th Cir. 1982); <u>Alltrade, Inc. v. Uniweld Prods. Inc.</u>, 946 F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is discretionary."). The first-to-file rule is "a generally recognized doctrine of federal comity" permitting a district court

to decline jurisdiction over an action. Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (citing Pacesetter, 678 F.2d at 94-95).  The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments.  See Church of Scientology of Cal. v. U.S. Dep't of Army, 611 F.2d 738, 750 (9th Cir. 1979).  As such, the rule should not be disregarded lightly.  See id.  Courts analyze three factors in determining whether to apply the first-to-file rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity of the issues.  Schwartz v. Frito-Lay N. Am., 2012 WL 8147135, at *2 (N.D. Cal. 2012) (citing Alltrade, 946 F.2d at 625).

    The chronology of the two actions is undisputed - the North Carolina action was filed one day before the California action.  One day is sufficient to satisfy the chronology factor.  See Martin v. Graybar Elec. Co., 266 F.2d 202, 205 (7th Cir. 1959) (quoting Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 130 F.2d 474, 475 (3d Cir.1942)).  Both actions name the same two parties, and no other party, satisfying the second factor. The parties point out that there is some difference as to the issues at stake, since the California action does not state a claim for patent infringement while the North Carolina action requests a declaration of Mad Panda's non-infringement of Gunnar's patents and a declaration of their invalidity. Despite their lack of perfect congruity, the two actions need not be identical, but only "substantially similar" to satisfy the first-to-file rule. Dumas v. Major League Baseball Properties, Inc., 52 F. Supp. 2d 1183, 1193 (S.D. Cal. 1999), vacated on other grounds by, 104 F. Supp. 2d 1224 (S.D. Cal. June 21, 2000), aff'd, 300 F.3d 1083 (9th Cir. 2002). Consequently, the Court finds that the "sameness" requirement is satisfied

since the California action completely overlaps with the North Carolina action, even though the latter asks for declaratory relief for patent infringement. Thus, all three of the first-to-file rule factors are satisfied.

**B. Exceptions to the First-to-File Rule**

Gunnar argues that this Court should use its discretion to decline application of the first-to-file rule in the interest of equity and because the balance of convenience factor weighs in favor of this later-filed action. See Adoma v. Univ. of Phoenix, Inc., 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010); Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994). The Court is aware of an exception allowing it to override the first-to-file rule under circumstances of bad faith, anticipatory suit, and/or forum shopping. Alltrade, 946 F.2d at 628. "Generally a suit is anticipatory when the plaintiff filed its suit upon receipt of specific, concrete indications that a suit by the defendant was imminent." Ward, 158 F.R.D. at 648.

Some courts have treated the filing of a declaratory judgment action after receipt of an intent to sue letter as evidence that the first-filed declaratory action was filed for anticipatory reasons, and amounted to impermissible forum shopping justifying deviation from the first-to-file rule. See e.g., Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967); Alaris Med. Sys. Inc. v. Filtertek Inc., 2001 WL 34053241, at *2 (S.D. Cal. 2001); Z-Line Designs, Inc. v. Bell'O Intern., LLC, 218 F.R.D. 663, 666 (N.D. Cal. 2003). Others, while noting the exception, have not gone so far. Guthy–Renker Fitness, LLC v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 271 (C.D. Cal. 1998) (finding that the notice-of-suit letter at issue "neither provided nor intended to provide [the declaratory suit plaintiff] with a specific, concrete indication of imminent suit within the

meaning of <u>Amerada</u> and <u>Ward</u>"); <u>Royal Queentex Enterprises v. Sara Lee Corp.</u>, 2000 WL 246599 (N.D. Cal. 2000) (applying the first-to-file rule because, <u>inter alia</u>, there were no misleading communications by the first filing party before filing suit).

Here, Gunnar asserts that Mad Panda's first-filed declaratory judgment action was brought pursuant to Gunnar's letter and in anticipation of litigation, and that this is bad faith forum shopping. Gunnar argues that Mad Panda "race[d] to the courthouse" in response to the letter instead of responding to its good faith effort to settle, because Mad Panda wanted to deprive Gunnar of its choice of forum (Dkt. No. 16, at 7). Gunnar assets that it did not intend to file a patent claim at the time it sent the letter to Mad Panda, or even now, because it first needs to review Mad Panda's product to determine whether it incorporates patent-protected features of the Scope eyewear (Dkt. No. 16, at 5). Mad Panda, on the other hand, does not contest Gunnar's assertion that it filed the North Carolina action in apprehension of Gunnar filing an infringement suit based on the tone and content of its letter (Dkt. No. 14-1, at 2). However, Mad Panda argues that its action does not amount to forum shopping in bad faith, because it was reasonable to affirmatively seek a judicial declaration of its rights to continue its business practices instead of waiting to eventually defend those practices in a patent and trademark infringement lawsuit threatened by Gunnar (Dkt. No. 14-1, at 7).

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201; <u>see also</u> <u>Wickland Oil Terminals v. Asarco, Inc.</u>, 792 F.2d 887, 893 (9th Cir. 1986). Actions brought under of § 2201 are justiciable if "there is a substantial controversy between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941); see also National Basketball Association v. SDC Basketball Club, 815 F.2d 562, 565 (9th Cir. 1987). Filing a declaratory judgment action in anticipation of litigation has been found to be bad faith when done solely to forum shop. See e.g., 24 Hour Fitness USA, Inc. v. Apex Stores, LLC, 2008 WL 4155598, at *1 (N.D. Cal. 2008).

The Court finds that under the circumstances, Mad Panda's action in filing the North Carolina action, where it resides, before responding to Gunnar's settlement proposal, was reasonable and does not amount to bad faith forum shopping. The record suggests that Mad Panda brought its declaratory action in good faith for the purpose of securing the relief prayed for, namely to remove the threat of uncertainty about violating Gunnar's intellectual property rights. See Alltrade, 946 F.2d at 628 (citing Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 130 F.2d 474, 476 (3d Cir. 1942)). Gunnar's letter could reasonably be read by Mad Panda to suggest that it faced imminent threat of litigation and liability under trademark and patent infringement law. While prefacing the letter with the statement that "GUNNAR would prefer to resolve the matter amicably," the point is that Gunnar unequivocally threatened that it would "proceed to file a lawsuit" if Mad Panda failed to respond to the letter within 10 days (Dkt. No. 14-3). The letter's threatening tone was amplified by Gunnar's assurance that it had "favorable results in all matters it has needed to litigate" in protecting its intellectual property (Id. at p. 1). Additionally, Gunnar demanded that Mad Panda take eight specific steps "in hopes of resolving" the matter, including, inter alia, ceasing all sales of the NoScope

6

eyewear, delivering its remaining stock to Gunnar for destruction, abandoning its pending trademark application in connection with the potentially infringing product, providing an accounting of sales to Gunnar, and compensating Gunnar for the sales (Id. at p. 2). Even without litigation, the severity of those conditions aimed to destroy Mad Panda's sales. As such, the letter could have led Mad Panda to reasonably interpret it as a warning of impending litigation, instead of an overture to engage in good faith settlement negotiations. The Court is therefore satisfied that based on the letter, there exists an unresolved and substantial controversy between the parties, resolution of which Mad Panda was warranted in seeking through a declaration of its rights with respect to the sale of its NoScope eyewear.

Additionally, Gunnar's argument that filing a declaratory action upon receipt of a patent-holder's intent-to-sue letter warrants disregard of the first-to-file rule for equity reasons distorts the purpose of the Declaratory Judgment Act. See Royal Queentex Enterprises, 2000 WL 246599, * 4. While an alleged infringer cannot use the Declaratory Judgment Act to give it "a paramount right to choose the forum for trying out questions of infringement and validity," Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co., 342 U.S. 180, 185 (1952), alleged patent infringers may freely seek declaratory relief as a "shield" to threats of infringement lawsuits. Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 97 (9th Cir. 1982). The record suggests that this was Mad Panda's intent in filing the North Carolina action. Consequently, there are insufficient facts to disregard the first-to-file rule on the basis that Mad Panda filed the North Carolina action seeking declaratory relief as a bad faith measure motivated solely by forum shopping.

While there are grounds to dismiss the action based on the first-to-file rule, the Court finds that a stay is more appropriate for the reasons below.

## C. Forum Convenience

Mad Panda also argues that the California action should be transferred to North Carolina because San Diego is a less convenient forum for resolving this suit. See SAES Gatters S.p.A. v. Aeronex, Inc., 219 F. Supp. 2d 1081, 1089 (S.D. Cal. 2002). Gunnar makes the opposite argument in favor of San Diego. The Court believes that relaxing the first-to-file rule on the basis of convenience is a determination best left to the court in the first-filed action. See Ward, 158 F.R.D. at 648 (citing Alltrade, 946 F.2d at 628). In light of the Court's application of the first-to-file rule to this matter, determining the merits of the parties' respective convenience arguments is unnecessary.

## D. Motion to Stay

As an alternative to dismissal or transfer, Mad Panda requests a stay of this action. Gunnar also argues that the action should be stayed pending the outcome of the North Carolina court's ruling on its parallel Motion to Dismiss or Transfer the North Carolina action in favor of this forum (Dkt No. 16, at 12).[1] In cases where the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed. See Alltrade, 946 F.2d at 628 (citing Asset Allocation & Mgt. v. Western Employers Ins., 892 F.2d 566, 571 (7th Cir. 1989) ("Granted, the statute of limitations problems may not be serious.... But why take chances? It is

---

[1] A parallel Motion to Dismiss or Transfer was filed by Gunnar in the North Carolina action on October 10, 2014, and is fully briefed and pending decision as of March 2, 2015.

simpler just to stay the second suit".).  Gunnar believes that the North Carolina court "is very likely" to grant its parallel motion on the same exception to the first-to-file rule advocated in Gunnar's opposition to this motion.  While declining to speculate on the prospective outcome of Gunnar's parallel motion, the Court finds that it is appropriate to stay this matter pending its resolution.

### III. CONCLUSION

For the foregoing reasons, the Court finds that this action should be stayed pending resolution of Gunnar's parallel Motion to Dismiss or Transfer by the Honorable Senior Judge James C. Fox of the U.S. District Court for the Eastern District of North Carolina.  Accordingly, Mad Panda's Motion to Stay is **GRANTED**.  Having determined that dismissal or transfer are inappropriate at this time, the Court **DENIES** Mad Panda's pending Motion to Dismiss or Transfer.  However, if the litigation proceeds in the Eastern District of North Carolina, Mad Panda may move for dismissal of this action based on this Order.  Counsel for the parties shall appear for a status conference on August 4, 2015, at 4:00 p.m. in Courtroom 15B of the James M. Carter-Judith N. Keep United States Courthouse, 333 Broadway, San Diego, CA 92101.  Counsel may apply to appear telephonically.

**IT IS SO ORDERED.**

DATED:  March 9, 2015

                                       *Barry Ted Moskowitz*
                               **BARRY TED MOSKOWITZ, Chief Judge**
                               **United States District Court**